```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION

SAMUEL J. CALDWELL,              *
            Plaintiff,           *
vs.                              *
                                     CASE NO. 4:03-CV-198(CDL)
HOWARD INDUSTRIES, INC.          *
            Defendant.           *
```

O R D E R

Presently pending before the Court are Defendant's Motion for Summary Judgment (Doc. 19) and Defendant's Motion to Strike (Doc. 30). For the reasons set forth below, the Motion to Strike is denied, and the Motion for Summary Judgment is granted in part and denied in part.

BACKGROUND

This is a products liability case. Plaintiff was employed as an apprentice line operator by MASTEC, an electrical contractor that was under contract with Georgia Power Company to install power lines, transformers, street lights, and electrical supply. Plaintiff was on a crew installing an electrical transformer manufactured by Defendant. The transformer included a lifting mechanism with two welded nut fasteners on each side of the unit. To lift the transformer, installers generally threaded one lifting bolt into a welded nut fastener on each side of the transformer and then tightened the bolts. On the day of Plaintiff's injury, one bolt was already threaded into each side of the transformer, and Plaintiff's co-worker tightened them. The crew then attached nylon straps to the lifting bolts, and the transformer was lifted with a crane. While

the crane was lifting the transformer, one of the lifting bolts pulled out of the transformer and "propelled like a missile into Plaintiff's wrist."

The parties agree that the bolt came out of the transformer because it was not screwed in properly. Defendant contends that the transformer is not defective and that the injury occurred due to the human error of the installer. Plaintiff argues that the transformer's design is defective because it permitted the bolt to be cross-threaded and allowed the installer to think that the bolt was screwed in properly even though it was not. Plaintiff's expert offered two alternative designs: (1) a different bolt with the same number of threads as the welded nut fastener or (2) lifting inserts with brackets welded to the sides of the transformer.

In addition to the design defect allegation, Plaintiff contends that Defendant should be held liable on a failure-to-warn theory. It is undisputed that Defendant did not provide any instructions regarding how to use the transformer's lifting mechanism. Although Defendant contends otherwise, Plaintiff's expert testified in his deposition that there should have been some instructions to explain how to use the transformer's lifting mechanism.

Plaintiff also asserted a manufacturing defect claim, but he concedes that he has no evidence to support such a claim.

### DISCUSSION

*1. Motion to Strike*

Defendant has moved to strike the testimony of Plaintiff's expert, M. T. Harrelson. Defendant contends that Mr. Harrelson is not qualified to testify about the matters he intends to address,

that Mr. Harrelson's testimony is unreliable, and that Mr. Harrelson's testimony is irrelevant. Defendant challenges Mr. Harrelson's qualifications because Mr. Harrelson admits that he has no experience in the design, manufacture, or installation of electrical transformers. Defendant challenges Mr. Harrelson's reliability because Mr. Harrelson did not perform tests on the transformer at issue.

Mr. Harrelson has a bachelor of science degree in industrial engineering from the Georgia Institute of Technology, and he is a registered professional engineer (electrical) in Georgia and Florida. He worked for Georgia Power for 28 years, serving in a variety of engineering positions. During his tenure at Georgia Power, Mr. Harrelson was involved in a number of claims, damage, and accident investigations. Since his early retirement from Georgia Power in 1992, Mr. Harrelson has served as an Electric Utility Consulting Engineer, performing, *inter alia*, accident investigation and safety and engineering training for electric cooperatives and engineering consulting companies.

In forming his opinion in this case, Mr. Harrelson interviewed those involved in the accident and inspected the transformer, particularly the damaged nut fastener. Relying upon his engineering background and experience with heavy transformers, he came to the exact same conclusion as Defendant: the bolt pulled out of the transformer because it was not screwed in all the way.[1] Mr. Harrelson

---

[1] Mr. Harrelson does *not* make the type of contention that might have required him to do more extensive inspection and testing, e.g. that the lifting mechanism, installed properly, could not accommodate the transformer.

determined, based on his background and experience, that because the transformer's lifting mechanism allowed the installer to believe that the bolt was installed completely even though it was not, a safer design would contemplate either the use of a bolt that makes it clear to the user that it is installed properly or fixed lifting hooks that are welded into the side of the transformer.  Mr. Harrelson also provided the opinion that the manufacturer should have provided written instructions regarding how to install the transformer.

Based on Mr. Harrelson's education, experience, and background, the Court finds that Mr. Harrelson is qualified to render the opinions he offers in this case.  The Court further finds that his testimony is not unreliable.  Finally, the Court finds that Mr. Harrelson's testimony is relevant to the controversy at issue in this case.  For these reasons, Defendant's Motion to Strike is denied.

*2. Summary Judgment*

The Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Plaintiff concedes that he does not have sufficient evidence to support his manufacturing defect claim.  Accordingly, Defendant is entitled to summary judgment on that claim. However, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has put forth evidence from which a reasonable fact finder could find that the transformer's lifting mechanism was defectively designed, that a safer alternative design existed, and that Defendant had a

4

duty to warn of dangers with the lifting mechanism but failed to warn of those dangers.  Because genuine issues of material fact exist as to Plaintiff's design defect and failure-to-warn claims, summary judgment on those claims is inappropriate.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## CONCLUSION

Defendant's Motion to Strike (Doc. 30) is denied.  Defendant's Motion for Summary Judgment (Doc. 19) is granted as to Plaintiff's manufacturing defect claim.  Defendant's Motion for Summary Judgment is denied as to the remainder of Plaintiff's claims.

IT IS SO ORDERED, this 6th day of July, 2006.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE